UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ELIZABETH FUIMO,

                     Plaintiff,

   -v-                                             3:11-CV-339

CAROLYN W. COLVIN, Acting Commissioner of
Social Security,[1]

                     Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                             OF COUNSEL:

LACHMAN & GORTON                  PETER A. GORTON, ESQ.
Attorneys for Plaintiff
P.O. Box 89, 1500 East Main Street
Endicott, NY 13761

OFFICE OF REGIONAL GENERAL COUNSEL    THOMAS C. GRAY, ESQ.
SOCIAL SECURITY ADMINISTRATION REGION II
Attorneys for Defendant
26 Federal Plaza Room 3904
New York, NY 10278

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

      This matter is brought pursuant to §§ 205(g) & 1631(b)(3) of the Social Security Act,

as amended, 42 U.S.C. §§ 405(g) & 1383(c)(3), to review a final determination of the

Commissioner of Social Security denying the plaintiff's claim for Supplemental Security

---

[1] Carolyn W. Colvin ("Colvin) became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Colvin is substituted for Michael J. Astrue as the defendant in this action. The Clerk is directed to change the caption to reflect this change.

Income benefits.  The parties have filed their briefs, including the Administrative Record on Appeal, and the matter has been submitted for decision without oral argument.

## II. BACKGROUND

Plaintiff Elizabeth Fuimo ("plaintiff" or "Fuimo") filed an application for social security disability benefits on June 6, 2008, claiming a period of disability beginning on May 7, 2008. Her claims were denied on August 15, 2008.  She filed a request for a hearing, and a hearing was held before an Administrative Law Judge ("ALJ") on December 17, 2009.  The ALJ rendered a decision on March 26, 2010, denying plaintiff's claim.  Plaintiff appealed the ALJ's decision.  On March 10, 2011, the Appeals Council declined further review of the ALJ's decision.  Thus, the ALJ's decision became the final decision of the Commissioner.

## III. DISCUSSION

### A. Standard of Review

The scope of a court's review of the Commissioner's final decision is limited to determinating whether the decision is supported by substantial evidence and the correct legal standards were applied.  Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam) (citing Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002)); Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987)). "Substantial evidence means 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Poupore, 566 F.3d at 305 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which

detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S. Ct. 456, 464 (1951)).  If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive.  Id.

However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  Martone, 70 F. Supp. 2d at 148 (citing Johnson, 817 F.2d at 986).

A reviewing court may enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g); see Martone, 70 F. Supp. 2d at 148.  "Remand is appropriate where there are gaps in the record or further development of the evidence is needed," such as where new, material evidence has become available.  42 U.S.C. § 405(g); Martone, 70 F. Supp. 2d at 148 (citing Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand for rehearing directing the taking of additional evidence is warranted only if it is shown that there is new, material evidence "'and that there is good cause for the failure to incorporate such evidence into the record'" at the administrative hearing.  Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 643-44 (2d Cir. 1983) (quoting 42 U.S.C. § 405(g), as amended in 1980)).  Remand may also be appropriate if the Commissioner "misapplies the law or failed to provide a fair hearing."  Id. at 644.  However, where the underlying administrative decision is not supported by substantial evidence, reversal is appropriate because there would be no useful purpose in remanding the matter for further proceedings. Id. (reversing and remanding solely for calculation of benefits, subject to determination by the

district court of any motion by the agency to remand to consider new evidence); Parker, 626

F.2d at 235 (reversing and remanding solely for calculation and payment of benefits);

Simmons v. United States R.R. Ret. Bd., 982 F.2d 49, 57 (2d Cir. 1992) (same); Williams,

859 F.2d at 261 (same).

## B.  Disability Determination—The Five Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 423(d)(2)(A).

The Administrative Law Judge ("ALJ") must follow a five step evaluative process in determining whether an individual is disabled. See 20 C.F.R. §§ 404.1520, 416.920. In the first step the ALJ must determine whether the claimant is engaging in substantial gainful activity.  If the claimant is engaging in substantial gainful activity he is not disabled and he is not entitled to benefits.  Id. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful employment, then step two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform

basic work activities. Id. §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from a severe impairment, then step three requires that the ALJ determine whether the impairment meets or equals an impairment listed in Appendix 1 of the regulations ("Appendix 1"). Id. §§ 404.1520(d), 416.920(d); see also id. Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." Martone, 70 F. Supp. 2d at 149 (citing Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

The burden of proof with regard to the first four steps is on the claimant. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); Ferraris, 728 F.2d at 584.

If it is determined that claimant cannot perform past relevant work, the burden shifts to the agency for the fifth and final step. Perez, 77 F.3d at 46. This step requires the agency to examine whether the claimant can do any type of work. 20 C.F.R. §§ 404.1520(g), 416.920(g). The regulations provide that "factors such as a claimant's age, education, and previous work experience" should be evaluated to determine whether a claimant has the residual functional capacity to perform work in any of five categories of jobs: very heavy, heavy, medium, light, and sedentary." Perez, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2). "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity." Poupore, 566 F.3d at 306.

A claimant may seek review of an adverse decision by the ALJ from the Appeals Council. Perez, 77 F.3d at 44. If review is granted, the decision of the Appeals Council is

the final decision of the Commissioner. Id. If review is denied, then the final decision is that of the ALJ. Id. The final decision is judicially reviewable pursuant to 42 U.S.C. § 405(g).

### C. Analysis

Fuimo argues that the ALJ erred in three ways. First, she contends that the ALJ erred in finding that her impairments did not meet or equal listing 12.05(C) of Appendix 1. Second, plaintiff argues that the ALJ improperly evaluated the medical records, and failed to include all of her nonexertional limitations, in determining her RFC. Third, she contends that the ALJ erred in not considering social anxiety, which should have been found to be a severe condition had the ALJ considered it.

#### 1. Listing 12.05(C)

As noted above, if a claimant's impairment or combination of impairments meet or equal an Appendix 1 listing, then the claimant is considered disabled. 20 C.F.R. § 416.920(d). Listing 12.05 concerns mental retardation:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

Appendix 1 Listing 12.05. Subsection C requires a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. 12.05(C). The lowest of the verbal, performance, or full scale IQ derived from an intelligence test is the value used to determine the presence of mental retardation. Id. 12.00(D)(6)(c). Moreover, in assessing the presence of mental retardation, "the narrative report that accompanies the test results should comment

on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation." Id. 12.00(D)(6)(a).

Dr. Russell performed a WASI on May 7, 2008. R. at 171. This test resulted in a full scale IQ of 67. Id. Dr. Russell's narrative was consistent with the test scores. See id. at 169-71. Dr. Noia conducted a WAIS-IV on January 7, 2010, resulting in a full scale IQ of 70. Id. at 255. His narrative also was consistent with the test scores. See id. at 255-58. Therefore, the ALJ was correct in finding that Fuimo's intelligence test scores fell within what is considered mental retardation.[2]  See id. at 16.

The ALJ determined that plaintiff did not demonstrate deficits in adaptive functioning, nor did the record establish adaptive functioning deficits during her developmental period, i.e., before the age of 22. Id. According to the ALJ, plaintiff's reported abilities to maintain daily activities shows that she had no deficits in adaptive functioning. At the hearing before the ALJ, Fuimo testified that she attended special education for all classes. Id. at 32. She went to the childcare program at BOCES, but could not complete the program because she could not do a required presentation to the group. Id. at 33. The ALJ stated that she left school because she was pregnant, not because of cognitive difficulties. Id. at 16. However, Fuimo was in special education classes throughout her years of schooling, and had difficulties with all subjects. Id. at 32, 190. She could not qualify for mental health programs because she could not attend the orientation because there were too many people. Id. at 35.

---

[2] Although the ALJ recognized that the medical evidence established plaintiff's IQ at or below 70, meeting the definition for mental retardation, she nonetheless found Fuimo's severe impairment to be "borderline intellectual functioning" rather than mental retardation. Id. at 15. It is noted that, for example, Dr. Russell suggested that borderline intellectual functioning may be ruled out by performance of the WAIS III test, id. at 171,–72, but he never made a diagnosis of borderline intellectual functioning. See also, id. at 195 (Dr. Moore diagnosing mild mental retardation).

Despite taking medication for depression, Fuimo testified that she wakes up crying and does not want to leave the house. Id. at 36. She is able to take care of her son "because that's what snaps me out of it, and to clean my house." Id. at 37. The ALJ relied on her being able to go shopping, but failed to consider that her sister-in-law takes her. Id. She stated that she does not go out alone. Id. at 44. According to the ALJ she maintained full time employment for three years. Id. at 16, 33. However, he failed to consider that her boss at that job was extremely accommodating, allowing her to take a break in the back if too many people came in to the store and overwhelmed her. Id. at 41. She failed to show up for the job or to call in quite a few times, which her boss tolerated for a while, but eventually led to her termination. Id. at 34. Further, Fuimo testified that because of her depression she cries about 65% of the time. Id. at 43. She enjoys reading novels and doing jigsaw puzzles. Id. at 38. However, that is the sum total of her leisure-time activities. See id.

In addition to plaintiff's own testimony, medical sources indicated that plaintiff suffered adaptive functioning deficits from her developmental period (prior to age 22) through the time of the latest evaluation. According to Dr. Russell, Fuimo suffered from cognitive deficits before age 21, and her adaptive functioning was significantly impaired. Id. at 171. Other consultative examiners, while they did not specifically address deficits prior to age 22, did note adaptive functioning impairments and cognitive deficits with no indication of manifestation in adulthood rather than childhood or adolescence. See id. at 193-94 (Dr. Moore); 197 (Dr. Apacible); 250–52 (Dr. Noia).

Thus, both plaintiff's own testimony and the information from medical sources show functioning deficits establishing that plaintiff's impairments meet or equal the listing of 12.05(C). Further, there is not substantial evidence in the record to support the ALJ's

determination that Fuimo's combination of severe impairments does not meet or equal listing 12.05(C).

## 2. Non-exertional Limitations in Determining RFC

Plaintiff argues that the ALJ's determination of her RFC is not supported by substantial evidence because the ALJ improperly evaluated the medical records and did not include all of her non-exertional limitations.

The ALJ found that Fuimo had the RFC to perform a full range of work at all exertional levels which consist of simple one- or two-step tasks with only simple decision-making. Id. at 17. Where, as here, there is no treating source to be given presumptive effect, all medical opinions in the record must be assessed. 20 C.F.R. § 416.927(c). Weight is given to an opinion based upon consideration of the following factors: treatment relationship, length of treatment relationship and the frequency of examination, nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors. Id. § 416.927(c)(1)–(6).

The ALJ gave little evidentiary weight to Dr. Russell's opinion, set forth in a letter dated September 3, 2008, that plaintiff was severely disabled and not competitively employable. R. at 20; see id. at 225 (Dr. Russell's 9-3-08 letter). It was proper to give little weight to this opinion, which concerned issues reserved to the Commissioner. See 20 C.F.R. § 416.927(d)(1). However, the ALJ failed to state what, if any, weight she gave the remainder of Dr. Russell's opinions. R. at 20. In fact, in evaluating plaintiff's RFC, the ALJ mentions Dr. Russell only in terms of the opinion of disability to which she afforded little weight. See id. at 17–20.

Dr. Russell performed a psychological evaluation of Fuimo on May 7, 2008, including WASI and WRAT3 testing. Id. at 166–72. Dr. Russell's treatment relationship (consultative examination), length of the treatment relationship (single consultation), frequency of examination (single consultative examination), and nature and extent of the treatment relationship (consultative, single examination) was the same as the other consultative examiners Drs. Moore and Noia. His opinions were well-supported by his clinical examination and psychological testing, and were consistent throughout his report. Id. at 171–72. Dr. Russell's specialization as a licensed psychologist positioned him well to psychologically evaluate Fuimo. Finally, other factors, such has his thorough educational, vocational, and social history of plaintiff; and his in-depth evaluation of the psychological testing and the results' consistency with plaintiff's history, id. at 168–69, indicate that Dr. Russell's opinion was worthy of significant weight. Therefore, the ALJ erred in not considering Dr. Russell's opinion, exclusive of the opinion of disability, as worthy of significant weight in relation to the other opinions in the record.

Dr. Russell opined that due to very low intelligence Fuimo might have difficulty following directions or performing multi-task assignments. Id. at 171. He found her perceptual motor skills to be below average. He opined that plaintiff's depression would cause difficulty reporting to work, that she would be prone to angry outbursts, and that she demonstrated poor emotional regulation which would likely interfere with her ability to perform work on a continuing, daily basis. Id.

Dr. Moore opined that Fuimo's attention and concentration were impaired due to her limited intellectual ability. Id. at 193. Dr. Moore found that plaintiff was able to count but made simple calculation errors and could not do serial 3s. Id. With regard to Fuimo's ability

to work, Dr. Moore opined that plaintiff could understand simple directions and instructions and perform simple rote tasks, consistent with the ALJ's FRC assessment. However, Dr. Moore also opined that plaintiff counld not learn complex tasks, that she had difficulty with attention and concentration, she was anxious around others and depressed, she had difficulty with stress and reacted impulsively in stressful situations, and that her depression, anxiety, and limited intellectual ability might cause problems with making appropriate work decisions and maintaining a regular work schedule. Id. at 194. Dr. Moore's opinions were consistent with those given by Dr. Russell. The ALJ improperly gave Dr. Moore's opinions only partial evidentiary weight, as she did with Dr. Russell's opinions, without considering the factors set forth in 20 C.F.R. § 416.927(c)(1)–(6). Consideration of these factors should lead to giving Dr. Moore's opinions significant weight, again as the result should have been with Dr. Russell.

 The ALJ gave "some weight" to Dr. Apacible's opinions. However, in reviewing the factors, Dr. Apacible's opinions should be given less weight than Drs. Russell and Moore because Dr. Apacible merely reviewed the record without a personal evaluation of plaintiff. See id. at 19. In addition, Dr. Apacible's mental RFC determinations were contradicted by his narrative. Compare, id. at 215–18 with id. at 217.

 The ALJ gave Dr. Noia's opinions "greatest weight" because they were based on an examination of plaintiff and "supported by the objective evidence of record." Id. at 20. In doing so, the ALJ improperly ignored that fact that Drs. Russell and Moore also examined plaintiff. Moreover, Dr. Noia did not examine plaintiff until early 2010, while Drs. Russell and Moore examined Fuimo in 2008, the same year as her alleged onset of disability. Finally, the ALJ did not state what objective evidence of record was in support of Dr. Noia's opinions,

and review of the record does not reveal supportive evidence.  Rather, evidence of the record is contrary to Dr. Noia's opinions.  For example, Dr. Noia found that plaintiff could perform limited complex tasks with supervision and independently.  Id. at 252.  No evidence in the records supports this finding; evidence in the record indicates that plaintiff can only perform simple tasks, with supervision.  Other examples include Dr. Noia's opinions that Fuimo could make simple appropriate decisions and interact moderately well with others, while all evidence in the record establishes that plaintiff is incapable of making appropriate decisions in the workplace and has significant difficulty interacting with others.

The ALJ failed to appropriately evaluate the medical evidence in the record, importantly affording the opinions of Drs. Russell and Moore little weight while giving Dr. Noia's opinion greatest weight, contrary to the directives of the regulations.  See 20 C.F.R. § 416.927.  Therefore, the ALJ's determination of plaintiff's RFC was not supported by substantial evidence.

### 3. Consideration of Social Anxiety as a Severe Impairment

According to plaintiff, the ALJ failed to consider her social anxiety in determining what severe impairment or combination of impairments she suffers from at Step 2 of the evaluation.  At Step 2, the ALJ considered Fuimo's intellectual functioning, depression, and alcohol and marijuana abuse in remission, and found that the combination of such impairments was severe.  R. at 15–16.  Noticeably absent from this evaluation is any mention of social anxiety.  See id.  The government states that the ALJ did consider social anxiety.  However, even a not-so-careful reading of the ALJ decision at Step 2 reveals the complete failure of the ALJ to mention social anxiety.  The government also contends that because the ALJ found in plaintiff's favor at Step 2 (i.e., that she suffered from a severe combination of

impairments), that there was no reversible error. In support of this contention, the government cites Dillingham v. Astrue, No. 09-CV-236, 2010 WL 3909630 (N.D.N.Y. Aug. 24, 2010) (Bianchini, M.J.) (Report and Recommendation), adopted by 2010 WL 3893906 (Sept. 30, 2010, N.D.N.Y.) (Sharpe, J.). In Dillingham, the reviewing court found that the ALJ's conclusion that the purportedly severe impairments of degenerative disc disease and diverticulitis were not severe was supported by substantial evidence. Id. at *4. In reaching this conclusion, the court noted that the ALJ reviewed the objective evidence and clinical findings, which provided substantial support for the ALJ's conclusion. Id. at *4–5. However, because the ALJ found at Step 2 that Dillingham suffered from the severe impairment of anxiety disorder and then continued the sequential analysis, any errors in step two were harmless. Id. at *5. Thus, in Dillingham the harmless error finding was alternative to the finding that substantial evidence supported the ALJ's finding. Additionally, the ALJ actually considered the purportedly severe impairments at Step 2. Here, in contrast, there could be no consideration of whether substantial evidence supported a finding that social anxiety was not a severe impairment since the ALJ completely failed to consider social anxiety at Step 2.[3] Rather, a harmless error finding would have to stand on its own, without any underlying evaluation of the seriousness of the impairment which was not considered in the Step 2

---

[3] The facts of Dillingham are somewhat misleading in an analogy to this case because social anxiety was found to be a severe impairment in that case. Id. at *5. A more appropriate analogy can be drawn if the facts are set forth as follows. In Dillingham, plaintiff contended a combination of severe impairments A, B, and C. The ALJ considered the three impairments and found that A and B were severe, but C was not severe. The reviewing court determined that the finding that C was not a severe impairment was supported by substantial evidence, but in any event because it was found that plaintiff suffered from the severe combination of impairments of A and B, the determination as to C was harmless.

Here, plaintiff contends that she suffered from impairments A, B, C, and D. The ALJ determined that she suffered from severe impairments A, B, and C. The ALJ did not consider D. In this case, consideration of impairment D was completely lacking, in contravention of the regulations requiring consideration of all the evidence.

analysis.[4] Dillingham does not stand for the proposition that it is harmless error to completely fail to consider a purportedly severe impairment at Step 2. The ALJ failed to apply the appropriate legal standards in the Step 2 analysis.

## IV. CONCLUSION

The ALJ's determination that plaintiff did not establish that she had deficits in adaptive functioning presently and during her adaptive period was not supported by substantial evidence. Moreover, substantial evidence in the record did not support the ALJ's determination that Fuimo's severe combination of impairments did not meet or equal listing 12.05(C). Rather, the record establishes that plaintiff's combination of impairments did meet or equal listing 12.05(C). Thus, the ALJ should have found Fuimo disabled and entitled to benefits.

The ALJ improperly evaluated the non-treating source medical evidence. Therefore, her determination of plaintiff's RFC was not supported by substantial evidence . Finally, the ALJ erred in failing to consider whether plaintiff's social anxiety was a severe impairment.

Failure to follow the appropriate legal standards ordinarily would call for remand to follow the proper legal standards. However, because evaluation of the evidence in the record following the proper legal standards would undoubtedly result in a determination of disability, reversal is more appropriate. Moreover, given the lack of substantial evidence to support the ALJ's determinations, there is no useful purpose in remanding the matter for further proceedings. Rather, it is appropriate to reverse and remand solely for calculation of benefits.

---

[4] It is further noted that determination of an impairment as serious at Step 2 could affect the analysis of equivalence at Step 3.

Accordingly, it is

ORDERED that

1. The plaintiff Elizabeth Fuimo's motion for judgment on the pleadings is GRANTED;

2. The Commissioner's decision denying plaintiff's claim for Supplemental Security Income benefits is VACATED; and

3. This matter is REMANDED to the Commissioner solely for calculation and payment of benefits.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

_____
United States District Judge

Dated: June 7, 2013
      Utica, New York.